COMMONWEALTH vs. JOHN F. DONAHUE.

Norfolk.  January 5, 1976. — March 23, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Receiving Stolen Goods.  Practice, Criminal,* Grand jury proceedings: stenographer; Disclosure of evidence; Suppression of evidence by prosecutor. *Grand Jury.  Witness,* Immunity. *Evidence,* Corroborative evidence, Immunized witness, On cross-examination. *Superior Court,* Grand jury proceeding: stenographer.

In a criminal case, the defendant's motion to dismiss on the ground that a district attorney had used a secretary in his office, untrained as a court reporter, to tape record and transcribe testimony before a grand jury in violation of Rule 63 of the Superior Court (1974) was properly denied where no prejudice to the defendant was shown as a result and where the secretary had been sworn in by the presiding judge as a reporter for the grand jury.  [947-948]

A judge in a criminal case did not misapply G. L. c. 233, §§ 20E and 20F, in ruling that a witness who had been granted immunity to testify before a grand jury after the return of an indictment against the defendant, had immunity for the transaction.  [948-949]

At the trial of an indictment charging a defendant with receiving stolen property, testimony by an immunized witness that he had stolen electric heaters from a building under construction and delivered some of them to the defendant who had them placed in his garage was sufficiently corroborated to satisfy the requirements of G. L. c. 233, § 20I, by testimony from the owner of the heaters that they were stolen in the circumstances related by the witness and testimony by a State police lieutenant that the defendant had stated that he had seen electric heaters in his garage, but that he did not know how they got there or who removed them.  [949-950]

At a criminal trial of an indictment for receiving stolen property, there was no error in the judge's refusal to permit defense counsel to cross-examine an immunized witness, who admitted having stolen the property in issue, as to the location of other fruits of the crime where it appeared that the questioning would call for disclosure of inculpatory information outside of the scope of the immunity granted the witness.  [950-951]

In a criminal case, there was no abuse of discretion in the judge's refusal to allow defense counsel to cross-examine an immunized witness as to a telephone call from the witness to a State police

lieutenant in which the witness allegedly procured assistance from the officer in avoiding some difficulty in an unrelated criminal matter, particularly in light of the extensive cross-examination permitted to defense counsel on the issue of promises and inducements. [951]

The defendant in a criminal case was not entitled to a new trial on the ground that the Commonwealth, in response to an order to provide the defendant with a statement of promises and inducements, answered that none had been made where, although a witness might have inferred that he would receive favorable consideration, the record supported the judge's findings that no promises were made. [952]

In a criminal trial, during which the prosecutor produced testimony and argument that certain stolen property had been installed in a particular place, and the defendant later learned that no such installation had occurred, the trial judge was warranted in finding that the prosecutor had no knowledge of the falsity, and a new trial was not required where the facts of the alleged installation were only remotely, rather than immediately, related to the issue of the defendant's guilt. [952]

A defendant charged with receiving stolen goods was not entitled to a new trial on the ground that the Commonwealth, ordered to furnish evidence favorable to the accused, failed to provide the defendant with a copy of the grand jury testimony of a witness, not testifying at the trial, who had denied participation in the larceny contrary to the testimony at the trial of the Commonwealth's chief witness. [952-954]

The Commonwealth's failure to provide the defendant with the name of a grand jury witness who did not testify at the trial did not require a new trial despite an order that names of grand jury witnesses be disclosed to the defense before trial where it appeared that the crucial ruling, included in a lengthy court room dialogue, was that the Commonwealth was to furnish the grand jury testimony only of those witnesses on whom the prosecution intended to rely for presentation of its case at the trial. [954-955]

INDICTMENT found and returned in the Superior Court on October 15, 1974.

The case was tried before *Zarrow*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Melvin S. Louison* (*Jerry E. Benezra* with him) for the defendant.

*Thomas J. May*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   This is an appeal under G. L. c. 278, §§ 33A-33G, following a verdict of guilty on an indictment for receiving stolen property.   The defendant was sentenced to one year in a house of correction, which sentence was suspended and the defendant was placed on probation for two years.   Subsequently, the defendant's motion for stay of execution of said sentence was allowed by the judge.   Thereafter, the defendant filed three separate motions for new trials, which motions were denied and to which denials exceptions were duly saved.

Upon review of the assignments of error, we conclude that there was no error and that the judgment shall be affirmed.

The facts are as follows.   The Commonwealth presented its case through four witnesses:   Brian Fernald, who testified under a grant of transactional immunity; Harvey Freedman; Canton police detective Sergeant John Ruane, Jr.; and State police detective Lieutenant William Bergin.   The Commonwealth also introduced in evidence thirteen Singer brand electrical heating units.

Essentially, the immunized witness, Brian Fernald, testified that on December 17, 1973, he met with one John Gregory and Stoughton police officer Thomas Allen. Following a conversation with Allen, Fernald was given a car by Allen and Fernald and Gregory proceeded to the construction site of Belnel Gardens in the Hyde Park section of Boston, where they stole approximately seventy electrical baseboard heaters, some light fixtures and some tools.   They placed the stolen goods in the car and then returned to Stoughton to the home of Jeffrey Gambrazzio. Allen removed three of the heaters from the car and took them across the street to the home of Joan Nardozzi; twelve of the heaters were left in the car and the remainder were sold to Gambrazzio.   Fernald, Allen and Gregory then drove to the defendant's home in Stoughton. The defendant was at the time the police chief of Stoughton.   In the presence of the defendant and Allen, Fernald and Gregory unloaded the twelve heaters and placed

them in the defendant's garage. This was done after the defendant conferred with Allen, and then pointed or gestured toward the defendant's garage. Fernald identified the Commonwealth's exhibits 1A-1L as being the units he stole from Belnel Gardens and delivered to the defendant.

Harvey Freedman testified that he was an electrical contractor and was performing electrical work at Belnel Gardens during December of 1973. He testified that between fifty to 100 Singer brand electrical heating units were stolen from the construction site and he identified the Commonwealth's exhibits 1A-1L as belonging to him and as being the same units he had been installing in Belnel Gardens.

Sergeant John Ruane, Jr., testified that as a result of a conversation with Fernald on May 21, 1974, he obtained a warrant to search the home of Jeffrey Gambrazzio. He identified the Commonwealth's exhibits 1A-1L as being the same units he removed from Gambrazzio's home under the terms of the search warrant.

Lieutenant William Bergin testified that on June 4, 1974, he met with the defendant, the defendant's attorney and others. At this meeting Bergin presented the defendant's attorney with a stenographic copy of Fernald's statement made to an assistant district attorney and Bergin on May 22, 1974. As the defendant's attorney read the statement aloud, the defendant remarked at one point that he had seen electrical heating units in his garage but, in response to a question from Bergin, the defendant stated that he did not know who delivered them to his garage, who removed them, or where they were then located.

Gambrazzio testified that he is a licensed electrician and knew the defendant. At the request of Stoughton police officer Thomas Allen he visited the defendant's home, estimated an electrical job and subsequently did deliver heating units to the defendant's garage which were other than Singer brand units. He further testified

that he knew the immunized witness, Fernald, and had worked with him at Joan Nardozzi's home where Gambrazzio had installed electrical heating units. Gambrazzio was unable to identify the Commonwealth's exhibits 1A-1L as being the same units that were taken from his home under the provisions of a search warrant by the Canton police.

The defendant testified that Fernald had never been at his house. The defendant admitted seeing electrical heating units in his garage but did not know who delivered them or who removed them.

1. There was no error in the denial by the judge of the defendant's motion to dismiss or for other appropriate relief for an alleged violation of Rule 63 of the Superior Court (1974).

Rule 63 reads as follows: "*Stenographic notes* of all testimony given before any grand jury shall be taken by a *court reporter*, who shall be appointed by a justice of the superior court and who shall be sworn. Unless otherwise ordered by the court, the court reporter shall furnish transcripts of said notes only as required by the district attorney or attorney general" (emphasis supplied).

The defendant argues that, in violation of the rule, the district attorney used a secretary-employee from his office who was not fully trained as a court reporter. Further, the secretary utilized a tape recorder rather than the usual transcription methods.

It is clear, at least, that the woman was sworn in by the presiding judge as a "reporter" for the grand jury. In any case, we need not further consider whether the rule of court was violated, since no prejudice to the defendant has been shown. The defendant points to one mistake in the transcript of the testimony of a witness. Arguably this was a serious error, but it was rectified before trial and the trial proceeded with defense counsel in possession of correct transcripts.

We leave to the judges of the Superior Court consideration of the broader principle argued by the defendant,

i.e., that it may not be in the interest of fair administration of grand jury proceedings to have stenographic or reportorial service performed by one employed in the district attorney's office, or by one only partially trained for such service.

2. The defendant argues that the judge misunderstood and misapplied the statute (G. L. c. 233, §§ 20E and 20F) with regard to the grant of immunity to the witness Brian Fernald. There is no question that Fernald was the most important witness against the defendant. The defendant's argument asserts that the district attorney used the grand jury appearance of this witness merely as a contrivance to procure immunity for him, and thus assure his cooperation with the prosecution.

The grand jury returned the indictment in this case on October 15, 1974. The witness appeared thereafter on November 14, 1974, before the same grand jury and claimed his Fifth Amendment privilege as to all questions related to the subject matter of the indictment. The Commonwealth then applied for a grant of immunity under G. L. c. 233, § 20E, and the application was allowed by a Justice of the Supreme Judicial Court on January 3, 1975. The term of the indicting grand jury had by then expired, and the witness appeared before a new grand jury on January 9, 1975, and gave testimony. Subsequently, after a voir dire hearing on the issue, the trial judge ruled that under G. L. c. 233, § 20G, the witness had immunity for the transaction in this case.

In concluding that there was no error, we observe that there was full compliance with the statutory procedure, and that immunity was properly granted before both the grand jury and the trial jury. The questions which the witness at first refused to answer, and those which he later answered, were related to the indictment and to relevant conduct of the defendant and other persons. The argument of the Commonwealth, that the testimony of the witness was procured for the possible purpose of securing further indictments related to this defendant and

this indictment, is at least as logical as the somewhat conjectural contention of the defendant that the proceedings were contrived by the district attorney for the purpose of securing immunity for the witness.

3. The defendant asserts error in the denial of his motion for a directed verdict pursuant to G. L. c. 233, § 20I, because the Commonwealth did not, as required by that statute, produce any evidence in support of the testimony of the immunized witness, Fernald, on any element of the Commonwealth's prima facie case. We do not agree.

Section 20I of c. 233, inserted by St. 1970, c. 408, provides: "No defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of section twenty E." In *Commonwealth* v. *De-Brosky*, 363 Mass. 718, 730 (1973), this court stated that § 20I must be read "to require that there be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant."

The elements of proof "essential to convict" a defendant of the crime of receiving stolen goods are: (1) one must buy, receive or aid in the concealment of property which has been stolen or embezzled, (2) knowing it to have been stolen. See G. L. c. 266, § 60; *Commissioner of Pub. Safety* v. *Treadway*, 368 Mass. 155, 160 (1975).

Clearly the Commonwealth's proof here resided primarily in the testimony of the immunized witness. Contrary to the defendant's argument, however, there was corroborative evidence within the requirements of the statute, as we have construed it in *DeBrosky, supra.* There was evidence, for example, from the owner of the heaters that they were indeed stolen in about the circumstances related by the immunized witness. More important, there was highly significant testimony from Lieutenant Bergin as to a conversation he had with the defendant during the lieutenant's investigation of the case. In sum-

mary, the defendant stated that he had seen electric heaters in his garage; that he did not know how they got there; that he did not know who removed them; and that he did not know where they were at that time. Clearly this evidence was corroborative of the testimony of the immunized witness, as required by the statute.

4. Although the defendant, through his counsel, was permitted extensive cross-examination of the immunized witness Fernald, the defendant asserts error in the judge's exclusion of two questions, addressed in recross-examination of that witness, as to the location of other fruits of the crime (some lighting fixtures and electric screwdrivers). A similar question had been asked by the prosecution on redirect examination of the same witness, and the witness answered, "I believe I kept them."

The record indicates that these two questions were excluded because the judge (and the prosecutor) considered the location of the "other fruits" as outside the scope of the immunity granted to the witness Fernald. From all that appears on the record, and taking into account that the stolen tools in particular could be considered burglarious instruments, the judge well may have interpreted the thrust of the questioning as calling for disclosure of information inculpatory of Fernald in matters not related to the break at Belnel Gardens.

We conclude that there was no error. The judge was apparently mindful of those words of caution we have frequently quoted when considering a claim of privilege under the Fifth Amendment: The test is whether it is "'perfectly clear . . . that the answer[s] cannot possibly have [a] tendency' to incriminate. Whether a question calls for an incriminating answer must be determined in the setting in which it is asked" (emphasis original). *Gambale* v. *Commonwealth*, 355 Mass. 394, 396 (1969), quoting from *Murphy* v. *Commonwealth*, 354 Mass. 81, 84 (1968), and *Commonwealth* v. *Baker*, 348 Mass. 60, 62-63 (1964). See *Temple* v. *Commonwealth*, 75 Va. 892, 898 (1881).

In this setting the use of caution was well advised, considering also that it was not made apparent to the judge by defense counsel that restriction of this line of questioning would substantially prejudice the defendant, nor was it made clear how the answers sought could be substantially helpful to the defendant's case. Counsel for the defendant, for example, rather than cryptically referring to the witness's transactional immunity, could have requested a voir dire of the witness, outside the presence of the jury, to inquire into "whether the witness was being afforded too broad a protection based upon his privilege." *Commonwealth* v. *Douglas,* 354 Mass. 212, 225 (1968).

The defendant's argument that the judge's ruling was error of constitutional dimension fails because his contentions fall far short of those made and upheld in cases considering restrictions on cross-examination into such crucial jury issues as bias or prejudice. *Commonwealth* v. *Ferrara,* 368 Mass. 182, 186-190 (1975). *Davis* v. *Alaska,* 415 U.S. 308, 319 (1974). Cf. *Commonwealth* v. *Franklin,* 366 Mass. 284, 290-291 (1974).

5. There was no error in denying the defendant the right to cross-examine the witness Fernald concerning a telephone call by the witness to Lieutenant Bergin, who was involved in the investigation of the instant indictment. By this telephone conversation, the witness is now said to have asked for, and procured, assistance from Lieutenant Bergin in avoiding some difficulty the witness was having with the police in a minor matter not related to this indictment. Presumably the question was aimed at showing proof of promises and inducements by the police. The admissibility of the excluded inquiry rested in the judge's discretion, particularly in light of the disclosure in the record before us of the rather extensive cross-examination permitted to defense counsel on the issue of promises and inducements. See *Commonwealth* v. *Granito,* 326 Mass. 494, 496 (1950); *Commonwealth* v. *Corcoran,* 252 Mass. 465, 486 (1925).

6. The Commonwealth, ordered by the court to provide the defendant with a statement of promises, rewards or inducements, answered that none had been made. Defense counsel engaged in extensive cross-examination on this issue. From all of this, no testimony was elicited to show such promises or inducements. Nevertheless, the defendant contends that this court should infer that such promises or inducements were made, particularly from a showing that the witness was treated with extreme leniency for his confessed part in the transaction. The trial judge specifically found that no such representations were made, and we conclude that the record supports his finding. The assistant district attorney did concede that the witness might have inferred that he might receive favorable consideration, but no promises were made. The defendant's argument thus fails.

7. The defendant's argument that the Commonwealth knowingly used false and misleading testimony and argument is not supported by the record. The evidence and the prosecutor's argument were concerned with a contention that some of the stolen heaters may have been installed in the home of Joan Nardozzi. This impression was conveyed to the jury, although later it was learned by the defendant that no such installations occurred. It is argued that this untrue testimony must have been known to the prosecutor at the time it was offered before the jury.

On the contrary, the trial judge found, and we believe warrantably, that the prosecutor had no such knowledge of falsity. More detailed cross-examination by the defense as to this issue would almost certainly have resolved the controversy. Moreover, the facts of the alleged installation were only remotely, rather than immediately, related to the issue of the defendant's guilt. There was no error.

8. Finally, the defendant argues that the judge erred in denying the defendant's motion for a new trial based on the Commonwealth's failure to provide the defendant with a copy of the grand jury testimony of John Gregory.

On October 25, 1974, the defendant's motion to be furnished with evidence favorable to the accused was allowed by the judge. Subsequent to the trial, in the defendant's first motion for a new trial, he moved that the judge inspect the grand jury testimony of Gregory. He did so, and ruled some time later that "upon examination" he found no exculpatory evidence and therefore denied the motion for a new trial.

At a later date, the defendant filed another motion for a new trial, and at the hearing on that motion defense counsel informed the judge that he had now come into possession of a copy of Gregory's grand jury testimony. Defense counsel said that the copy had been obtained from Thomas Allen, who had been indicted for stealing the electric heaters involved here, and who had previously procured the transcript of Gregory's testimony by court order. The grand jury transcript discloses that Gregory had denied any participation in the larceny of the heaters, contrary to the claim of Fernald.

This court has stated the rule that: "To demonstrate constitutional error three elements must be shown: (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Commonwealth* v. *Gilday*, 367 Mass. 474, 487 (1975). See *Commonwealth* v. *Swenson*, 368 Mass. 268, 276 (1975); *Giglio* v. *United States*, 405 U.S. 150, 154 (1972); *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963).

It is argued that the circumstances of this case lend support to the defendant's claim of constitutional error. Gregory's denial of participation in the larceny, it is contended, was potentially useful for the defense in impeachment of the accusing witness Fernald, who had testified that Gregory was his accomplice in the theft. We comment here that it is far from clear to us that the defendant would gain any exculpatory advantage, even by way of impeachment of Fernald, from any denials of partici-

pation by Gregory, since such denials might well be expected by the jury, and disregarded by it as unreliable.

The defendant argues also that he was further prejudiced in that the prosecution not only failed to provide the defendant with an account of Gregory's "exculpatory" statements, but also failed to inform the defendant that Gregory had even testified before the grand jury. This, says the defendant, was a violation of the judge's pre-trial order that names of grand jury witnesses should be disclosed to the defense before trial.

Even if we assume that Gregory's grand jury testimony could be considered exculpatory of the defendant, we conclude that there was no error in the denial of the motion for a new trial. The pre-trial rulings and orders of the judge, all entered without objection by the defense, make it clear that the Commonwealth reasonably could believe that it had no obligation to deliver to the defense a transcript of Gregory's testimony. The rulings of the judge as to various pre-trial motions, including those pertinent to our discussion here, were included in a lengthy court room dialogue, among the judge and counsel for both sides, on October 25, 1974. It is clear that at this conference the crucial ruling, one which fairly can be said to be controlling in all the circumstances, was that the Commonwealth was to make available to the defense only the grand jury testimony of those witnesses on whom the prosecutor intended to rely for presentation of his case at the trial of the indictment. This order was complied with and it was, in our view, reasonable for the prosecutor to assume that he need do no more with respect to the statements of grand jury witnesses.

For additional reasons, our conclusion reaches a fair and just result. It appears clear that the defendant now concedes that he was aware before trial of the alleged participation by Gregory in the crime. While this knowledge alone may not be determinative (see *Jackson v. Wainwright*, 390 F.2d 288, 298 [5th Cir. 1968]), we consider it together with the fact that the "exculpatory"

testimony consisted of the undoubtedly predictable denial by Gregory of criminal conduct.    In light also of the judge's order for merely limited disclosure of the testimony of grand jury witnesses, it is clear that neither the letter nor the spirit of the principle of the *Brady* case, *supra*, was violated.    The entire circumstances, also, lend considerable support to the Commonwealth's argument that the failure to produce Gregory was an informed tactical decision of the defendant.

*Judgment affirmed.*