COMMONWEALTH *vs.* MICHAEL P. TURNER.

Norfolk.   September 13, 1976. — February 2 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Venue, Directed verdict, Comment by judge, Appeal. *Evidence,* On cross-examination, Credibility of witness, Corroborative evidence, Immunized witness, Photograph, State of mind. *Witness,* Immunity, Credibility, Impeachment. *Constitutional Law,* Self-incrimination, Waiver of constitutional rights. *Waiver.*

There was no error in the circumstances in the denial of a criminal defendant's motion for a change of venue. [806-807]

There was no error at a criminal trial in limiting cross-examination of a witness concerning prior unrelated crimes where such evidence was irrelevant and was not admissible to impeach the witness's credibility under G. L. c. 233, § 21. [809-810]

Witnesses who had been granted immunity under G. L. c. 233, § 20G, and who testified before a grand jury about prior unrelated crimes in the mistaken belief that these crimes were within the scope of immunity did not thereby waive their right at a subsequent trial to invoke their privilege against self-incrimination when cross-examined by the defendant about these unrelated crimes. [807-811]

At a criminal trial there was sufficient corroboration of testimony by immunized witnesses to satisfy the requirements of G. L. c. 233, § 20I. [811-812]

This court suggested that procedures should be devised to avoid the drain of public funds and the burden on appellate courts resulting from the unnecessary inclusion or duplication of irrelevant material in records on appeal. [814-815]

INDICTMENTS found and returned in the Superior Court on January 13, 1975.

The cases were tried before *Chmielinski, J.*

*Alan S. Geismer, Jr. (Edward T. Dangel, III,* with him) for the defendant.

*Charles J. Hely,* Assistant District Attorney (*Arthur R. Tiernan, Jr.,* Assistant District Attorney, with him) for the Commonwealth.

QUIRICO, J.   The defendant was convicted by a jury in Norfolk County on indictments for murder in the first degree, assault with intent to rob, unlawfully carrying a weapon, and using a motor vehicle without authority, all arising out of an attempted armed robbery of a store in Dedham.[1] He was sentenced to life imprisonment on the murder indictment, to be followed by a term of not less than fifteen nor more than twenty years' imprisonment on the assault indictment. The two lesser indictments were filed. In this appeal subject to G. L. c. 278, §§ 33A-33G, the defendant alleges that the trial judge committed error in (a) denying a motion for a change of venue, (b) permitting prosecution witnesses to invoke the privilege against self-incrimination contained in the Fifth Amendment to the United States Constitution after having allegedly waived that privilege by testifying before the grand jury, (c) denying directed verdicts based on allegedly insufficient corroboration of the testimony of immunized witnesses, (d) permitting the Commonwealth to introduce testimony regarding the defendant's prior crimes, and (e) allegedly erroneous evidentiary rulings.

---

[1] Bruce A. Turner, the defendant's cousin, was tried with the defendant and convicted on similar indictments arising out of the same incident for which the defendant was convicted. A suggestion of death was filed with this court on behalf of Bruce A. Turner, who died on September 9, 1976, and the cases against him thus terminated.

We summarize the evidence. Two masked men entered the Cumberland Farms store on Bussey Street in Dedham about 7:20 P.M. on March 25, 1974. One of the men wore a green mask. The taller of the two men was carrying a very long black gun, while the other was carrying a shorter gun. They pointed their guns at the cashier Thomas M. Connors (Connors), stated, "This is a robbery," and told him to open the safe. They ordered a customer, Walter Wilson, to get back, fatally shot him in the face and chest, and then fled.

The police found a .44 or .45 caliber bullet embedded in the floor of the store, and at the autopsy a .22 caliber and a .44 or .45 caliber bullet were removed from the victim's body.

On March 26, 1974, the police found a blue green 1970 Dodge automobile, reported stolen the day before, less than a mile from the scene of the shooting. A knotted green scarf with human bloodstains was found in the back seat.

As a result of promises of immunity from the Norfolk district attorney, and after having received a limited grant of immunity from this court, John F. Wallace (Wallace) and his stepbrother, James Thomas Evans (Evans), described the events surrounding the homicide and attempted robbery to the police, to the grand jury, and at the trial of the defendant.

Wallace testified that Evans, Bruce Turner, and Michael Turner had joined him at his apartment in South Boston on the afternoon of March 25, 1974, and talked about "pulling a robbery." Wallace and Evans said they saw two hand guns at the apartment: Bruce Turner had a .45 caliber and Michael Turner had a .22 caliber. Evans gave Bruce Turner a green V-shaped scarf, which belonged to Evans's girl friend who lived elsewhere in the same building.

The foursome, Wallace, Evans, and the two Turners, left the apartment early that evening and drove to Dedham in two cars. They parked one car and drove to the Cumberland Farms store in the other, a stolen blue green

Dodge, which they parked around the corner from the store. The Turners got out of the Dodge, and went into the store. Shortly thereafter they ran back to the Dodge and ordered Wallace and Evans to drive away. Bruce Turner said, "We blew it. I had to shoot him." His finger was bleeding and he wrapped the green scarf around it. Wallace drove to where the other car had been parked. They all got out of the Dodge and drove away in the other car.

The four separated and met later the same evening at Wallace's apartment. Helen Lux, who shared the apartment, was also there. She testified that Michael Turner was "very nervous," that Bruce Turner unloaded a large gun and that Michael Turner unloaded a smaller gun. Two empty .45 shells and an empty .22 shell were placed in a cup in the cupboard. She gave Bruce a cloth for his finger, which was bleeding. There was further testimony tying the Turners to various weapons and ammunition and linking them to these crimes.

When Michael Turner was arrested in his home in May, 1974, an unloaded .38 caliber revolver was found in his shaving kit. After his arrest, he asked the police, "Which gun killed him?" Both Turners testified seeking to exonerate themselves and to attribute the crimes to Wallace and Evans.

We hold that there was no error in the trial of these indictments, and we therefore affirm Michael Turner's convictions.

1. *Change of venue.* There was no error in the denial of the defendant's motion for a change of venue. Before trial the defendant moved for a change of venue relying on G. L. c. 277, § 51, which provides in part that "[u]pon petition of a person indicted for a capital crime, the court may, if in its opinion an impartial trial cannot be had in the county where the case is pending, order a change of venue *to any county adjoining the county where the indictment was found*" (emphasis added). On appeal, the defendant now contends that (1) the trial judge took too narrow a view of his power and responsibility by inter-

preting G. L. c. 277, § 51, to preclude transfer of homicide cases to nonadjoining counties, and (2) if the statute so limits the transfer of homicide cases, it is unconstitutional under *Groppi* v. *Wisconsin,* 400 U.S. 505 (1971), as violating the defendant's right to an impartial jury under the Fourteenth Amendment to the United States Constitution.

Considering the second contention first, we hold that the defendant did not establish "that the guilt . . . had been so generally and substantially prejudged by the residents of the county that an unbiased tribunal . . . could not be obtained." *Commonwealth* v. *Bonomi,* 335 Mass. 327, 333 (1957). The jury were carefully screened to protect the defendant from prejudice from pre-trial publicity, most of which occurred approximately eight months before the trial; neither the Commonwealth nor the defense exhausted its peremptory challenges of jurors; and both counsel stated that they were content with the jury. There was no abuse of discretion or other error in denying the motion for change of venue. *Commonwealth* v. *Scott,* 360 Mass. 695, 697 (1971). *Commonwealth* v. *Smith,* 357 Mass. 168, 173 (1970). In view of this holding we do not reach the question whether a change of venue, if any, is limited by statute to a change to an adjoining county, and if so, whether such a limitation would violate any constitutional right of a defendant.

2. *Limitation on cross-examination.* The Commonwealth applied under G. L. c. 233, §§ 20C-20G, to a single justice of this court for an order granting immunity to Wallace, Evans, and Helen Lux. By an order of June 24, 1974, the single justice (a) dismissed the application as to Helen Lux at the Commonwealth's request; (b) ordered Wallace and Evans to "answer the questions before the grand jury for Norfolk County propounded to them and all further questions which may be propounded to them before such grand jury relating to the alleged attempted armed robbery of the Cumberland Farms store in Dedham, Massachusetts, on March 25, 1974, and the alleged murder of Walter Wilson"; and (c) ordered that Wallace and Evans "be and they thereby are granted immunity from

prosecution with respect to their testimony to the extent provided by G. L. c. 233, § 20G . . . ."

General Laws c. 233, § 20G, inserted by St. 1970, c. 408, provides in part that a witness who has been granted immunity "shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction matter, or thing concerning which he is so compelled . . . to testify. . . ." Both the defendant and the Commonwealth agree that in these cases immunity extended only to testimony relating to the March 25, 1974, attempted robbery and homicide.

Despite the limited scope of their grants of immunity, Wallace and Evans testified before the grand jury about their involvement in prior and unrelated crimes, including two prior armed robberies of the same Cumberland Farms store in Dedham during August and September of 1973.[2] When they were cross-examined at trial, they invoked the Fifth Amendment with respect to these prior crimes at the advice of counsel. The defendant contended that the grand jury testimony constituted a waiver of the privilege which carried over to trial and that the witnesses were therefore susceptible to cross-examination on these prior criminal acts. The defendant argues that, since Wallace and Evans admitted participation in prior robberies of the same Cumberland Farms store, they were likely to have been responsible for the homicide and attempted robbery in issue.

---

[2] The briefs of the defendant and the Commonwealth quote or cite various portions of the grand jury testimony of Wallace and Evans, as the alleged basis of the claim that they thereby waived Fifth Amendment privilege and that they therefore could not assert that privilege at the trial. However, the transcript of the grand jury testimony was not made part of the record, and it is not before us. ("[T]he material in question should be identified so that in case of conviction and appeal it may be sealed and transmitted to the reviewing court." *Commonwealth* v. *Hall,* 369 Mass. 715, 725 [1976], quoting from *Commonwealth* v. *Lewinski,* 367 Mass. 889, 903 [1975]). We are therefore unable to review the judge's decision that the grand jury testimony did not constitute a waiver. For the purposes of this case, we give the defendant the benefit of assuming that Wallace testified to his participation in an August, 1973, armed robbery of the Dedham Cumberland Farms store, and that Evans testified to a September, 1973, robbery of the same store.

After a voir dire of the witnesses, an examination of the grand jury testimony, and extensive arguments by counsel, the judge found that the witnesses' grand jury testimony about other crimes was given under the mistaken impression that their immunity extended to prior crimes. He therefore ruled that Wallace and Evans had not waived their privilege as to prior crimes, and that the privilege could be asserted during cross-examination at the trial. The court sought to accommodate the defendant's interests by offering to permit the defense to introduce an authenticated or agreed copy of the grand jury transcript of the testimony of Wallace and Evans. Defense counsel did not pursue this course and now claims error in the limitation of cross-examination on the prior crimes.

In *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973), the Supreme Court said that the right of cross-examination "is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' *Dutton* v. *Evans*, 400 U.S. 74, 89 (1970); *Bruton* v. *United States*, 391 U.S. 123, 135-137 (1968). It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer* v. *Texas*, 380 U.S. 400, 405 (1965). Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. E.g., *Mancusi* v. *Stubbs*, 408 U.S. 204 (1972). But its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined. *Berger* v. *California*, 393 U.S. 314, 315 (1969)." See *Commonwealth* v. *Donahue*, 369 Mass. 943, 950-951 (1976); *Commonwealth* v. *Michel,* 367 Mass. 454, 461 (1975); *Commonwealth* v. *Johnson*, 365 Mass. 534, 543 (1974).

Despite the exacting demands of the confrontation clause, the limitations on cross-examination in this case were proper for several reasons. First, by statute evidence of prior misconduct may not be used to impeach a witness's credibility unless that conduct has been the basis of a

criminal conviction. G. L. c. 233, § 21. "In Massachusetts, the rule has been that a witness cannot be asked on cross-examination, in order to affect his credibility, about his part in transactions irrelevant to the issue on trial." *Commonwealth* v. *Schaffner*, 146 Mass. 512, 515 (1888). *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 755 (1961), and cases cited. Second, even if the introduction of such evidence were not prohibited by statute, it would not be relevant. The defendant, in effect, sought to prove the character of the two witnesses by proving that they had committed prior crimes, and thus hoped to show that the witnesses had committed the crimes for which the defendant was indicted. Character evidence may not be used to show criminal propensity. See W.B. Leach & P.J. Liacos, Massachusetts Evidence 297-298 (4th ed. 1967). Limiting the cross-examination to exclude this inadmissible evidence was not error. Therefore, we need not rest our decision on the claim of waiver when, in any event, the testimony as to prior crimes was inadmissible for other reasons.

Nevertheless, we consider the defendant's claim of waiver of the Fifth Amendment privilege by the witnesses Wallace and Evans and conclude that the judge properly ruled that there was no waiver in this case. The judge found as a matter of fact that, in testifying before the grand jury about earlier crimes unrelated to those for which the defendant was indicted, the witnesses were mistaken about the reach of the immunity which they had received and that they did not intend to waive their Fifth Amendment rights. *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938), defined a waiver as "an intentional relinquishment or abandonment of a known right or privilege." In view of the importance of the constitutional right against self-incrimination, e.g., *Malloy* v. *Hogan*, 378 U.S. 1 (1964), the Supreme Court has insisted that waiver of that right "is not lightly to be inferred." *Smith* v. *United States*, 337 U.S. 137, 150 (1949).

It is clear from reading the entire transcript that the defendant was not denied the right or reasonable opportunity to cross-examine Wallace and Evans.

We have held in numerous cases that "the scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown to a party by reason of too narrow restriction or too great breadth of inquiry." *Commonwealth* v. *Hall,* 369 Mass. 715, 731 (1976), quoting from *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952). There was no abuse of discretion by the judge in this regard.

3. *Denial of motions for directed verdicts.* The defendant argues on two grounds that it was error to deny his motions for directed verdicts. The first ground is that the judge erroneously limited the cross-examination of Wallace and Evans, that therefore their direct testimony should be struck, and that without this evidence the Commonwealth did not present a prima facie case on the various indictments. Since we have determined that there was no error in limiting the cross-examination of Wallace and Evans, the argument based on the limitation is without merit.

The second ground is that the defendant was entitled to have verdicts directed in his favor because the Commonwealth allegedly did not present any evidence to corroborate the testimony of its immunized witnesses on any element of its prima facie case. There was no error in this regard.

General Laws c. 233, § 20I, inserted by St. 1970, c. 408, provides that "[n]o defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of section twenty E." In *Commonwealth* v. *Donahue,* 369 Mass. 943, 949 (1976), and *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 730 (1973), we construed this statute "to require that there be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant." In the *DeBrosky* case we further indicated that "evidence corroborating an accomplice's testimony concerning the com-

mission of the crime would be sufficient under the statute, even if there were no other evidence connecting a defendant to the crime." *Ibid.*

The requirements of the statute have clearly been met in these cases. Wallace and Evans, who had been granted immunity under the statute, testified that on the evening of March 25, 1974, Bruce Turner, wearing a green scarf as a mask and armed with a .45 caliber pistol, and Michael Turner, armed with a .22 caliber pistol, attempted to rob a Cumberland Farms store in Dedham while Wallace and Evans waited outside in a car. They testified further that when the Turners returned from the store, Bruce said that they "blew" the robbery, that he had to shoot a man in the store, and that Michael had fired a shot that hit Bruce in the hand.

There was considerable evidence corroborating this testimony on various elements of the crimes, although none of this corroborating evidence directly "connect[ed] ... [the] defendant to the crime." *Commonwealth* v. *DeBrosky, supra.* The store clerk, Connors, testified that two armed masked men came into the store, said, "This is a robbery," told him to open the safe, and that they shot a customer. Connors's testimony about the height of the men, the size of the gun used by each and the green mask worn by one of the men offered further corroboration. The medical examiner testified that the victim died of bullet wounds in the head and heart. The ballistics expert testified that a .44 or .45 caliber bullet was found in the victim's head. Another witness testified that Bruce and Michael Turner left the apartment that day carrying a large and a small gun, respectively. This evidence cumulatively meets the requirements of corroboration of G. L. c. 233, § 20I, as construed by *Commonwealth* v. *DeBrosky, supra,* and *Commonwealth* v. *Donahue, supra.*

Because of our conclusion that the requirements of G. L. c. 233, § 20I, have been satisfied as to the witnesses Wallace and Evans, we do not reach the question whether that statute applies to the witness Helen Lux who had been

given only informal promises that she would not be prosecuted.

4. *Evidentiary rulings.* The defendant claims error in various evidentiary rulings and a statement by the judge. Many of these claims were not based on any objection made or exception saved during trial. We therefore need not consider these allegedly erroneous rulings, *Commonwealth* v. *Underwood,* 358 Mass. 506, 509 (1970), but we have done so and find them without merit.

There is likewise no substance to the remaining claims based on exceptions saved. The introduction of two photographs of the victim was not error. *Commonwealth* v. *Bys,* 370 Mass. 350, 357-361 (1976), and cases cited. The introduction of the police journal entry of March 25, 1974, was largely cumulative of other testimony; although arguably it contained multiple level hearsay, any error was harmless beyond a reasonable doubt.

There was no error in the admission of the testimony of Helen Lux that Michael Turner appeared "very nervous" when he returned to her apartment on the evening of the homicide. This was not a conclusory statement of unqualified opinion, but rather a description that was later elaborated. Such an observation is admissible. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 339 (1957).

The two allegedly leading questions do not appear leading; nor would such questions, even if somewhat leading, constitute reversible error. *Commonwealth* v. *Flynn,* 362 Mass. 455, 467 (1972), and cases cited.

Finally, the judge's statement that Michael Turner, when testifying, was "inclined to make speeches" was not error. The judge was attempting to secure more responsive answers from the defendant, who was volunteering substantially more than each question called for. In the circumstances, the statement by the judge was warranted, and it was not error.

5. *Review under G. L. c. 278, § 33E.* On the indictment charging the defendant with murder in the first degree we have considered the entire cases on both the law and the

evidence as required by G. L. c. 278, § 33E, and we conclude that the verdicts were neither against the law nor against the evidence and that the interests of justice require neither a new trial nor the entry of a lesser degree of guilt than that found by the jury.

6. *Record on appeal.* The record on appeal in these cases covers 130 pages printed at public expense. The first seventy-five pages relate to the indictments against Michael Turner and the remaining fifty-five pages to the indictments against Bruce Turner, now deceased. Each defendant filed a "Motion for Omnibus Discovery Procedure" and attached thereto a set of blank forms used in the United States District Courts for such discovery. The motions and forms filed by each defendant are identical. Each motion occupies one printed page and the attached blank forms occupy eighteen printed pages of the record. The motion and forms are included separately as to each defendant, thus occupying a total of thirty-eight pages of the printed record.

If these motions and forms were necessary or relevant to any issue on which appellate review was sought, it would have been sufficient to print them once in the record. An examination of the identical assignments of errors filed by the two defendants indicates no claim of error related to these motions or forms, no argument was made in the brief of the defendant Michael Turner in relation thereto, and there is no reason apparent in the record for the inclusion of a copy of the motion and attached blank forms, much less for the appearance of this same material at two places in the record. While it is important that the record on appeal include a summary of all the proceedings necessary to enable this court to understand and decide the issues presented for appellate review, there is no justification for the inclusion of any material not required for that purpose, or for the duplicate or multiple inclusion of any required material when one copy with appropriate cross-reference will suffice.

General Laws c. 278, § 33C, as amended by St. 1974, c. 458, § 1, provides that "[u]pon the filing of a claim of appeal

... [t]he clerk shall forthwith prepare a concise summary of the record, which shall also include a copy of the indictment or complaint and of such pleadings and motions as the district attorney or defendant may designate." While the clerk is initially responsible for preparing the summary of the record, the district attorney and defense counsel are responsible for designating the additional "pleadings and motions" which are to be included in the summary. This statute does not authorize the unlimited and profligate expenditure of public funds. It assumes that persons who are authorized to have material included in a record to be printed at public expense will act discreetly and responsibly. Procedures can and should be devised to avoid the drain of public funds and the burden on appellate courts resulting from the unnecessary inclusion or duplication of irrelevant material in records on appeal. This may be an appropriate subject for consideration by trial courts and by the Massachusetts Judicial Conference Committee on Criminal Procedure, Subcommittee on Criminal Rules, which has already filed a report proposing new rules of criminal procedure and is currently studying possible new rules of criminal appellate procedure.

*Judgments affirmed.*