Michael TURNER, Petitioner, Appellee,

v.

Michael V. FAIR, Respondent, Appellant.

No. 79-1465.

United States Court of Appeals, First Circuit.

Argued Dec. 5, 1980.

Decided March 18, 1980.

---

Robert V. Greco, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for respondent, appellant.

Nelson S. Baker, Boston, Mass., by appointment of the court, for petitioner, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The Commonwealth appeals from the district court's grant of Michael Turner's petition for a writ of habeas corpus. The district court concluded that petitioner's sixth amendment right to confront the witnesses against him had been abridged by the state trial court's failure to strike the direct testimony of government witnesses who had invoked their fifth amendment privilege against self-incrimination during cross-examination. Because we conclude that the theory petitioner now advances to support his sixth amendment confrontation claim was not fairly presented to the state court, we vacate the order of the district court and remand with instructions to dismiss the petition.

. Petitioner, Michael Turner, and his co-defendant cousin, Bruce Turner, were tried in a Massachusetts state court and were convicted of murder in the first degree, assault with intent to rob, unlawfully carrying a weapon, and using a motor vehicle without authority. The evidence is summarized in the opinion of the Supreme Judicial Court (SJC) affirming petitioner's conviction:

"Two masked men entered the Cumberland Farms store on Bussey Street in Dedham about 7:20 P.M. on March 25, 1974. One of the men wore a green mask. The taller of the two men was carrying a very long black gun, while the other was carrying a shorter gun. They pointed their guns at the cashier Thomas M. Connors (Connors), stated, 'This is a robbery,' and told him to open the safe. They ordered a customer, Walter Wilson, to get back, fatally shot him in the face and chest, and then fled.

"The police found a .44 or .45 caliber bullet embedded in the floor of the store, and at the autopsy a .22 caliber and a .44 or .45 caliber bullet were removed from the victim's body.

"On March 26, 1974, the police found a blue green 1970 Dodge automobile, reported stolen the day before, less than a mile from the scene of the shooting. A knotted green scarf with human bloodstains was found in the back seat.

"As a result of promises of immunity from the Norfolk district attorney, and after having received a limited grant of immunity from this court, John F. Wallace (Wallace) and his stepbrother, James Thomas Evans (Evans), described the events surrounding the homicide and attempted robbery to the police, to the grand jury, and at the trial of the defendant.

"Wallace testified that Evans, Bruce Turner, and Michael Turner had joined him at his apartment in South Boston on the afternoon of March 25, 1974, and talked about 'pulling a robbery.' Wallace and Evans said they saw two hand guns at the apartment: Bruce Turner had a .45 caliber and Michael Turner had a .22 caliber. Evans gave Bruce Turner a green V-shaped scarf, which belonged to Evans's girl friend who lived elsewhere in the same building.

"The foursome, Wallace, Evans, and the two Turners, left the apartment early that evening and drove to Dedham in two cars. They parked one car and drove to the Cumberland Farms store in the other, a stolen blue green Dodge, which they parked around the corner from the store. The Turners got out of the Dodge, and went into the store. Shortly thereafter they ran back to the Dodge and ordered Wallace and Evans to drive away. Bruce Turner said, 'We blew it. I had to shoot him.' His finger was bleeding and he wrapped the green scarf around it. Wallace drove to where the other car had been parked. They all got out of the Dodge and drove away in the other car.

. . . . .

"When Michael Turner was arrested in his home in May, 1974, an unloaded .38 caliber revolver was found in his shaving kit. After his arrest, he asked the police, 'Which gun killed him?' Both Turners testified seeking to exonerate themselves and to attribute the crimes to Wallace and Evans."

*Commonwealth v. Turner*, 371 Mass. 803, 805–06, 359 N.E.2d 626, 627–28 (1977).

Petitioner's defense theory in the state court was that Wallace and Evans were the guilty parties, but had framed petitioner in order to obtain immunity from prosecution. Petitioner testified he had not been present during the robbery at all.

On cross-examination petitioner sought to question Wallace and Evans with respect to their prior robberies of the same Cumberland Farms store. In their testimony before the grand jury, Wallace and Evans admitted to robbing that store in August 1973 and September 1973, respectively, although their grants of immunity did not extend to these earlier offenses. Concluding that Wallace and Evans had not understood the scope of their immunity, the trial court therefore ruled that they had not validly waived their fifth amendment privilege by testifying before the grand jury to the earlier Cumberland Farms robberies; accordingly, the witnesses were permitted to invoke their privilege against self-incrimination when cross-examined about the earlier offenses.

Petitioner challenged this ruling in his appeal to the SJC. Focusing upon the repeated warnings the witnesses had received with respect to the scope of their immunity, petitioner primarily contended that Wallace and Evans had understood and waived their fifth amendment privilege and therefore should have been subject to cross-examination about their earlier robberies. Petitioner also argued in the alternative, however. He stated,

"[T]he trial court should have either not allowed the witnesses Wallace and Evans to invoke the Fifth Amendment as to prior crimes or ordered that the direct testimony of the witnesses be stricken . . . ."

Petitioner referred to the portions of the trial transcript where he had allegedly moved to strike [1] the witnesses' direct testi-

---

1. This motion to strike, made only with respect to Wallace's testimony, was grounded not on a *Cardillo* theory but rather solely upon an al-

leged noncompliance with the state immunity statute which directs that the immunized witness be given a copy of the transcript of his

mony and cited "*Commonwealth v. Johnson*, 1974 Adv.Sh. 1049, 1063 fn. 11 and cases cited therein" in support of his argument to strike. Note 11 of the *Johnson* case mentions *United States v. Cardillo*, 316 F.2d 606 (2d Cir.), *cert. denied*, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963), the case which articulates the theory upon which petitioner now relies.

*Cardillo* states in material part:

"In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. . . . On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part . . . ."

*Cardillo*, 316 F.2d at 611.

As *Cardillo* indicates, not every invocation of the fifth amendment privilege against self-incrimination results in a denial of the sixth amendment right of confrontation and requires striking the witness's testimony; a distinction is drawn between direct and collateral matters. While the line between these two categories may not always be clear, the essential inquiry "must finally be whether defendant's inability to make the inquiry created a substantial dan-

ger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." *United States v. Rogers*, 475 F.2d 821, 827 (7th Cir. 1973), *quoting Fountain v. United States*, 384 F.2d 624, 628 (5th Cir. 1968).

The determination whether a defendant has been denied the right to confront and cross-examine a witness requires "an analysis of the purpose of the inquiry and the role which the answer, if given, might have played in the defense." *Cardillo*, 316 F.2d at 612. Significantly, petitioner's discussion in his brief to the SJC of how he was prejudiced by the trial court's ruling mentioned only impeachment use of the thwarted cross-examination. He stated,

"[T]he court's ruling denied the defendant the opportunity to impeach the witnesses as to credibility and bias.

.   .   .   .   .

"That both Wallace and Evans had admitted to the Grand Jury that they had robbed the identical store on a previous occasion might very well have affected their credibility before the jury.

.   .   .   .   .

"[W]ithout the ability to bring out the facts of the other crimes and the inducements to testify, the bias of the witnesses remained far from apparent to the jury."

The SJC concluded that petitioner's sixth amendment right had not been violated since the use petitioner had sought to make of the fact that Wallace and Evans had robbed the same Cumberland Farms store was not permissible. The court stated,

"Despite the exacting demands of the confrontation clause, the limitations on cross-examination in this case were proper for several reasons. First, by statute evidence or prior misconduct may not be used to impeach a witness's credibility unless that conduct has been the basis of a criminal conviction. G.L. c. 233, § 21.

immunized testimony. Mass.Gen.Law c. 233, § 20G. During the voir dire of Wallace it appeared that Wallace had not received the transcript although his attorney had. The trial

court denied petitioner's motion to strike, apparently concluding that furnishing the transcript to Wallace's attorney was tantamount to furnishing it to Wallace.

'In Massachusetts, the rule has been that a witness cannot be asked on cross-examination, in order to affect his credibility, about his part in transactions irrelevant to the issue on trial.' [Citations omitted.] Second, even if the introduction of such evidence were not prohibited by statute, it would not be relevant. The defendant, in effect, sought to prove the character of the two witnesses by proving that they had committed prior crimes, and thus hoped to show that the witnesses had committed the crimes for which the defendant was indicted. Character evidence may not be used to show criminal propensity."

*Commonwealth v. Turner*, 371 Mass. at 809–10, 359 N.E.2d at 630.

Petitioner does not quarrel with the SJC's conclusions above, but rather, in an about-face, now argues he "sought not so much to impeach the general credibility of the witnesses" but instead to cast doubt on the account of the events they gave on direct examination and thus to demonstrate they robbed the store on March 25. Adopting the theory suggested by the district court and quoting from its opinion, petitioner argues,

"Had the petitioner been able to cross-examine the witnesses about the prior robberies, he could have explored similarities between the modus operandi of those robberies and the conduct of the March 25, 1974 robbery. Wallace and Evans may have exhibited unusual behavior in the 1973 robberies duplicated by the 1974 robbers, *see generally, Commonwealth v. Murphy*, 1933, 282 Mass. 593, 597–99, [185 N.E. 486,] or there may have been significant similarities in the warnings given to the store clerks on each occasion. Indeed petitioner was unable even to determine what type of gun had been used in the prior robberies so that he might compare it with the gun used in the 1974 robbery."

Further, petitioner contends cross-examination of Wallace and Evans with respect to their prior robberies may have tended to demonstrate their superior knowledge of and familiarity with the store. This, in turn, could have cast doubt on their account that they stayed in the getaway car while the two Turners, who had no particular expertise with respect to robbing this Cumberland Farms store, did the actual holdup.

The theory petitioner now advances, however, was never presented either to the trial court or to the SJC. As the Commonwealth now asserts in its brief, "this case could be captioned the 'case of the changing issue.' " The SJC dealt with the only use petitioner had proposed to make of Wallace's and Evans's grand jury testimony concerning prior robberies of the Cumberland Farms store and concluded it was impermissible. In view of that conclusion there was, of course, no reason to strike Wallace's and Evans's direct testimony. Plaintiff is now arguing an entirely new theory of relevancy to support the admissibility of evidence.

■ Generally, constitutional claims sought to be vindicated in a federal habeas corpus proceeding must be presented first to the state court. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Salemme v. Ristaino*, 587 F.2d 81, 86 (1st Cir. 1978); *Nelson v. Moore*, 470 F.2d 1192, 1197 (1st Cir. 1972), *cert. denied*, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003 (1973). While petitioner did present a sixth amendment confrontation claim to the SJC, the theory upon which the alleged sixth amendment violation was premised has since undergone material alteration. As the state court has not had "a fair opportunity to consider . . . and to correct" the violation now alleged, we vacate the judgment of the district court and remand with instructions that the petition be dismissed.[2] *Compare Filippini v. Ristaino*, 585 F.2d 1163, 1165 (1st Cir. 1978) (certain of

---

2. The district court did address the exhaustion question and concluded,

"[P]etitioner . . . advanc[ed] the same arguments [in his petition for habeas relief] that he urged before the Supreme Judicial

Court. We find, therefore, that petitioner has exhausted his state remedies with respect to each of his claims."

*Turner v. Fair*, 476 F.Supp. 874, 878 (D.Mass. 1979). We disagree, as set forth above.

the constitutional theories underlying sixth amendment confrontation claim not presented to state court and therefore not exhausted.)

*So Ordered.*