COMMONWEALTH vs. MICHAEL P. TURNER.

Norfolk. November 6, 1984. — January 21, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & LYNCH JJ.

*Evidence,* Cross-examination, Immunized witness. *Witness,* Immunity, Impeachment. *Constitutional Law*, Self-incrimination, Confrontation of witnesses. *Practice, Criminal,* New trial.

On a motion for a new trial of a criminal case, following previous review by this court, the defendant was not entitled to raise for the first time the contention that, by the trial judge's action in permitting the defendant's two alleged accomplices to invoke their privilege against self-incrimination following their direct testimony under a grant of immunity, the defendant had been improperly prevented from pursuing a line of questioning that might have cast doubt on the version of events given by the accomplices in their direct testimony. [688-689]

The judge at a criminal trial created no substantial risk of a miscarriage of justice by permitting the defendant's two alleged accomplices, following their direct testimony under a grant of immunity, to invoke their privilege against self-incrimination during cross-examination by defense counsel, where the testimony sought on cross-examination would not have established their untruthfulness with respect to specific events of the crime charged, and would have been cumulative of other testimony presented to the jury. [689-692]

INDICTMENTS found and returned in the Superior Court on January 13, 1975.

The cases were tried before *Henry H. Chmielinski, Jr.,* J.

After review by this court, reported in 371 Mass. 803 (1971), a motion for a new trial, filed on June 10, 1981, was heard by *Andrew R. Linscott,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Nelson S. Baker* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   The defendant, Michael P. Turner, was convicted of murder in the first degree, assault with intent to rob, unlawfully carrying a weapon, and using a motor vehicle without authority. Each of the convictions arose out of the armed robbery of a Cumberland Farms convenience store on March 25, 1974, during which a customer, Walter Wilson, was fatally shot. The defendant appealed his convictions to this court, and we affirmed. *Commonwealth* v. *Turner,* 371 Mass. 803 (1977) (*Turner I*).

Turner then filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts, contending that his confrontation rights under the Sixth Amendment to the United States Constitution were violated when the trial judge refused to strike the direct testimony of two accomplices to whom the Commonwealth had granted immunity, and who had invoked their privilege against self-incrimination during cross-examination about prior armed robberies of the same store. The District Court judge granted the writ, *Turner* v. *Fair,* 476 F. Supp. 874 (D. Mass. 1979), on the ground that "[t]he limitation on cross examination," occasioned by the witnesses' successful invocation of the Fifth Amendment, unconstitutionally prevented the defendant from "pursuing a line of questioning that might have cast doubt on the version of the events given by the two critical prosecution witnesses during their direct testimony." *Id.* at 882. The United States Court of Appeals for the First Circuit reversed. *Turner* v. *Fair,* 617 F.2d 7 (1st Cir. 1980). The Court of Appeals expressed no views on the merits of the defendant's petition, but instead noted that "[t]he theory petitioner now advances . . . was never presented either to the trial court or to the [Supreme Judicial Court]." *Id.* at 11. Accordingly, because "constitutional claims sought to be vindicated in a federal habeas corpus proceeding must be presented first to the state court," *id.,* the Court of Appeals remanded the petition to the District Court with instructions that it be dismissed.

On June 10, 1981, the defendant filed a motion for a new trial, setting forth the same arguments he had presented to the United States District Court. This motion was denied, on the

ground that "[n]o reason [was] offered . . . why the points now presented were not raised before the trial court or the Supreme Judicial Court. Such issues could have been raised at trial and on appeal." The defendant then filed a petition for leave to appeal which was allowed by a single justice of this court. See G. L. c. 278, § 33E. After consideration of the contentions made by the parties, and of the points set forth in the opinion of the United States District Court, we affirm the order denying the motion for a new trial.

The evidence brought forth at trial is detailed in our first review of these convictions. *Turner I, supra* at 805-806. The events relevant to this motion for a new trial are summarized as follows. In return for a limited grant of immunity, John F. Wallace and his stepbrother, James T. Evans, fully described their own roles, and that of the defendant, in the Cumberland Farms robbery during which a customer was killed. In essence, Wallace and Evans testified that early in the evening of March 25, 1974, they drove to a Cumberland Farms store in Dedham in a stolen Dodge automobile, accompanied by Michael and Bruce Turner.[1] Wallace and Evans remained in the automobile while the Turners went into the store. "Shortly thereafter [the Turners] ran back to the Dodge and ordered Wallace and Evans to drive away. Bruce Turner said, 'We blew it. I had to shoot him.'"[2] *Id.* at 806.

The defense contended that the Turners had not been present at the robbery, that Wallace and Evans were responsible for the crimes, and that they had framed the Turners in return for immunity from prosecution.[3] On cross-examination of both Wallace and Evans, trial counsel attempted, for impeachment

---

[1] Bruce Turner died shortly before our first review of these convictions. *Turner I, supra* at 804 n.1.

[2] In *Turner I, supra*, at 812, we held that the evidence corroborating the testimony of the immunized witnesses was sufficient to comport with the requirements of G. L. c. 233, § 20I.

[3] Defendant is currently represented by the same attorney who represented him in the Federal habeas corpus proceedings. This attorney was not involved in either the trial, or on appeal in *Turner I.*

purposes, to elicit information about prior robberies of the same Cumberland Farms store for which Wallace and Evans had already admitted responsibility.[4] The judge allowed the witnesses to invoke their privilege against self-incrimination when questioned about these earlier offenses. The defendant moved to strike the direct testimony of Wallace on the ground of alleged noncompliance with the State immunity statute, G. L. c. 233, § 20G, which requires that the immunized witness be given a copy of his immunized testimony. This motion was denied. The defendant never moved to strike the testimony of Evans.

In *Turner I,* the defendant contended that the limitations on cross-examination violated his Sixth Amendment right to impeach the prosecution witnesses. We disagreed, on the ground that "by statute evidence of prior misconduct may not be used to impeach a witness's credibility unless that conduct has been the basis of a criminal conviction. G. L. c. 233, § 21." *Turner I, supra* at 809-810. We also concluded that "even if the introduction of such evidence were not prohibited by statute, it would not be relevant. . . . Character evidence may not be used to show criminal propensity." *Id.* at 810.

As recognized by the Court of Appeals, *Turner* v. *Fair, supra* at 11, the defendant does not, and could not, contend that we erred in our conclusion as to the admissibility of impeachment testimony on cross-examination. In this motion for a new trial he advances "an entirely new theory of relevancy," *id.,* to the effect that trial counsel had intended not only to impeach the credibility of the prosecution witnesses, but also to cast a doubt on their version of what happened at the store, and to bolster the defense theory that Wallace and Evans were responsible for the March 25 robbery.[5]

---

[4] Before the grand jury, Wallace admitted robbing the Dedham Cumberland Farms store in August of 1973, and Evans admitted robbing the same store in September of 1973. These admissions were made because Wallace and Evans mistakenly believed that their immunity extended to prior crimes. *Turner I, supra* at 809. Accordingly, the trial judge ruled that Wallace and Evans had not waived their Fifth Amendment privilege with respect to these other offenses. *Id.*

[5] On account of the death of the trial judge, the motion for new trial was heard and decided by another Superior Court judge. Ordinarily, "we leave

We reaffirm "our 'unbroken practice' not to allow use of a motion for new trial to compel a judge to review questions of law which could have been raised at the trial." *Commonwealth v. Garcia,* 379 Mass. 422, 439 n.10 (1980). *Commonwealth v. Grace,* 376 Mass. 499, 500 (1978). *Commonwealth v. Hill,* 375 Mass. 50, 53 (1978). The defendant did not raise this issue either at his trial, or before this court on his initial appeal. The defendant did raise a Sixth Amendment challenge, but it was premised on the theory that the questions to which the witnesses pleaded the Fifth Amendment were aimed at collateral matters, not at the matters raised in direct testimony.[6] In short, the substance of the Sixth Amendment claim has undergone a complete metamorphosis, and thus runs afoul of our rule that a defendant is not permitted, as a matter of right, to raise an issue before the trial court on one ground, and then to present through a motion for a new trial that issue on an entirely different ground. See *Commonwealth v. Flynn,* 362 Mass. 455, 472 (1972).

Since this reconstituted version of the defendant's Sixth Amendment claim was never presented at trial, the question raised by the defendant's motion for a new trial is whether allowing Wallace and Evans to plead the Fifth Amendment on cross-examination, while refusing to strike their direct testimony, "created a substantial likelihood of a miscarriage of justice." *Commonwealth v. Pisa,* 384 Mass. 362, 363 (1981). *Commonwealth v. Harrington,* 379 Mass. 446, 449 (1980). In applying this standard we note that exercise of the power "to permit a motion for a new trial to be used as the vehicle by which to recoup or resurrect opportunities for appellate review previously lost by waiver or otherwise, on issues which

---

largely to the discretion of the judge the question whether a new trial should be granted." *Commonwealth v. Ellison,* 376 Mass. 1, 16 (1978). Here, however, we "apply that more liberal standard or attitude which is considered appropriate when the illness or death of the trial judge has made it necessary for the motion to be passed on at second hand." *Id.* at 17.

[6] We agree with the conclusion of the Court of Appeals, *Turner v. Fair, supra* at 10-11, that the District Court judge erred in determining that the defendant had in fact presented this Sixth Amendment theory to the State courts.

could have been but which were not seasonably raised . . . should be reserved for deserving situations." *Id.*

The Sixth Amendment guarantees the right of an accused to cross-examine the witnesses against him. See, e.g., *Davis* v. *Alaska,* 415 U.S. 308, 315-317 (1974); *Greene* v. *McElroy,* 360 U.S. 474, 496-497 (1959). However, it has been recognized that, in certain circumstances, the testimony of a prosecution witness may be used against a defendant, even though that witness invokes the Fifth Amendment on cross-examination. *United States* v. *Cardillo,* 316 F.2d 606, 611 (2d Cir.), cert. denied, 375 U.S. 822 (1963). Whether the Sixth Amendment has been violated in such a situation depends upon "an analysis of the purpose of the inquiry [on cross-examination] and the role which the answer, if given, might have played in the defense." *Id.* at 612. A defendant's confrontation rights have not been violated "unless the limitation on the cross-examination could reasonably be expected to have a substantial effect on the jury's decision." *United States* v. *Farnsworth,* 729 F.2d 1158, 1162 (8th Cir. 1984). *Hughes* v. *Raines,* 641 F.2d 790, 792 (9th Cir. 1981). As we elaborated in *Commonwealth* v. *Funches,* 379 Mass. 283, 293 (1979), the critical inquiry is "how prejudicial the denial of cross-examination has been. If the witness's testimony would merely have been collateral or cumulative, the direct testimony need not be struck." Because the witnesses' testimony at issue here, with respect to the commission of prior crimes, would have been both collateral and cumulative, we conclude that allowing Wallace and Evans to plead the Fifth Amendment on cross-examination while refusing to strike their direct testimony did not create a substantial likelihood of a miscarriage of justice.

First of all, we reject the defendant's attempt to repackage the cross-examination, initially undertaken for the collateral purpose of impeachment,[7] as an inquiry into "matters directly

---

[7] The defense counsel stated at trial that he wanted to use the prior robberies of the same store "to, in the first instance, impeach his [Wallace's] credibility and, secondly, to lay a foundation for asking him a question about a reward that had been posted of $1,000 in this case." Defense counsel was permitted freely to cross-examine Wallace and another witness about the reward.

related to the crime," *United States* v. *Newman,* 490 F.2d 139, 145 (3d Cir. 1974), or "matters about which the witness testified on direct examination." *United States* v. *Cardillo, supra* at 611. Neither Wallace nor Evans was aksed on direct examination about their complicity in prior robberies of the same Cumberland Farms store. Nor would testimony about these prior robberies "have established untruthfulness with respect to specific events of the crime charged." *Id.* at 613.

Secondly, we are convinced that the testimony sought about prior robberies would have been "cumulative." See *Commonwealth* v. *Funches, supra* at 293. As we recently noted in *Commonwealth* v. *McDermott, ante* 451, 455 (1984), "[w]hen matters sought to be elicited have been brought to the attention of the jury through other questioning or means, the right of cross-examination is not infringed." See *Commonwealth* v. *Walker,* 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976).

The defendant had ample opportunity to display to the jury the involvement of Wallace and Evans in prior robberies of the Dedham Cumberland Farms store. Most significantly, the jury heard the testimony of State police Lieutenant John Regan, to the effect that both Wallace and Evans had acknowledged responsibility for at least one previous robbery of the same store; that there was an outstanding charge against Wallace for one of these robberies; and that Wallace had admitted committing at least three additional armed robberies in other locations. The defendant also received the beneficial effect of having Wallace and Evans, when questioned about prior robberies at the Cumberland Farms store, repeatedly invoke the Fifth Amendment in front of the jury.[8] See *United States* v. *Calvente,*

---

[8] For example, the following exchange took place while Wallace was on the stand:

DEFENSE COUNSEL: "You pulled an armed robbery at the Cumberland Farm in August of 1973, did you not?"

. . .

THE WITNESS: "I would not like to testify on the grounds it might incriminate myself."

DEFENSE COUNSEL: "It might incriminate yourself."

THE WITNESS: "Yes."

722 F.2d 1019, 1025 (2d Cir. 1983) (government witness's invocation of Fifth Amendment "could only have been helpful to the defense"); *United States* v. *Seifert,* 648 F.2d 557, 561 (9th Cir. 1980) (same). Defense counsel further emphasized the role of Wallace and Evans in prior robberies of the same store during closing argument. In short, the jury were more than adequately exposed to testimony which suggested that Wallace and Evans had already robbed the same Cumberland Farms store at least once, and that they were entirely capable of committing the crime at issue here. Further testimony on the same point would only have been cumulative.[9]

*Order denying motion for new trial affirmed.*

---

[9] We also note that the judge twice instructed trial counsel that he would be permitted to show through the grand jury transcript that Wallace and Evans had admitted robbing the same store. See note 4, *supra*. Trial counsel did not avail himself of this opportunity. Though the record does not show precisely what that testimony is, the decision not to use it suggests that further inquiry into the prior robberies would not have been particularly helpful to the defense.