NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-219

COMMONWEALTH

vs.

TERRANCE MONTGOMERY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals his judgments of conviction, after a jury trial, of murder in the second degree, G. L. c. 265, § 1, unlicensed possession of a firearm, G. L. c. 269, § 10 (a), and unlicensed possession of a loaded firearm, G. L. c. 269, § 10 (n), as well as the denial of his motion for a new trial.  He raises five arguments on appeal.  First, he argues that questioning prospective jurors about whether they would be willing to convict a defendant without scientific or forensic evidence resulted in a jury predisposed to conviction, violating his right to a fair trial by an impartial jury, and that his counsel's failure to object to this question deprived him of effective assistance of counsel.  Second, he argues that the prosecutor improperly used a document to refresh a witness's recollection without first establishing that her memory was

exhausted. Third, the defendant argues that defense counsel was ineffective by failing to object to the racial composition of the jury. Fourth, he argues that his counsel was ineffective in failing to object to a statement in the prosecutor's closing argument relating to the trajectory of the bullet. Finally, he argues that the trial judge should have struck a witness's direct testimony after she invoked her Fifth Amendment privilege against self-incrimination during cross-examination. The defendant sought a new trial for all these reasons except the second and fifth ones, but after an evidentiary hearing, his motion was denied by the trial judge. We conclude that none of the defendant's arguments merit reversal of the convictions or a new trial. However, based on Commonwealth v. Guardado, 493 Mass. 1 (2023) (Guardado II), and Commonwealth v. Guardado, 491 Mass. 666 (2023) (Guardado I), we vacate the defendant's two firearm convictions.[1] We affirm the judgment of conviction of

---

[1] Guardado I was decided shortly after oral argument in this case. In light of that decision, we stayed this appeal. After Guardado II was decided, we solicited and received a joint status report from the parties in which they agreed that the firearm convictions should be vacated as a result of the decision in Guardado II. We agree with the parties' assessments that the judgments of conviction should be vacated. We do not agree, however, with the parties' view that we should ourselves order a new trial on the firearm charges. It is the Commonwealth's prerogative to decide whether to retry those charges.

2

murder in the second degree and the order denying the motion for a new trial.

1. Juror voir dire. Before trial, both the Commonwealth and the defendant submitted proposed questions to be asked through attorney-conducted voir dire. As pertinent here, the Commonwealth sought to ask prospective jurors whether they "would have difficulty convicting someone of a crime without forensic evidence such as DNA, Fingerprints, etc.?" and whether they could "find someone guilty of a crime based solely upon witness testimony if you found the witnesses credible and believable?" The judge permitted inquiry into this so-called "CSI effect." As a result, although the precise wording of each question was not identical,[2] each prospective juror was asked

_____

[2] Examples of the different phrasing used during the questioning of jurors who sat on the defendant's jury are:

> "And in this case[,] the evidence will primarily come from eyewitnesses rather than DNA or fingerprints. Would you have trouble convicting somebody of a serious crime without DNA or fingerprint evidence?

> "And in this case[,] the primary evidence will come from eyewitnesses rather than DNA or fingerprints, forensic evidence. Would you be able to convict somebody of a crime without DNA or fingerprint evidence?

> "And in this particular case[,] the majority of the evidence will come from eyewitnesses rather than DNA or fingerprints, forensic evidence. Would you be able to convict somebody of a serious crime without DNA or fingerprint evidence if you found the other evidence credible?

some variation of the question that included the word "convict." The defendant argues that he was deprived of his right to a fair jury because the questioning committed the empaneled jurors to a verdict before the trial began.  The judge did not abuse his discretion when he rejected this claim.

"Article 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the Constitution guarantee a criminal defendant the right to a trial before an impartial jury." Commonwealth v. Philbrook, 475 Mass. 20, 30 (2016).  "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors" (citation omitted), Commonwealth v. Steeves, 490 Mass. 270, 284 (2022), but the scope of voir dire "is in the sound discretion of the trial judge" (citation omitted), Commonwealth v. Dabney, 478 Mass. 839, 848 (2018).  During voir dire, "[t]he judge's duty is to 'examine jurors fully regarding possible bias or prejudice where it appears that there is a substantial risk that jurors may be influenced by factors extraneous to the evidence presented to them.'"  Commonwealth v. Perez, 460 Mass. 683, 688 (2011), quoting Commonwealth v. Garuti, 454 Mass. 48, 52 (2009).

The Supreme Judicial Court has questioned the "need for voir dire questions designed to counter any 'CSI effect,'"

---

"And would you be able to convict somebody of a serious crime based solely on eyewitness identification?"

4

describing it as a largely speculative theory. Commonwealth v. Gray, 465 Mass. 330, 338-339, cert. denied, 571 U.S. 1014 (2013). "CSI effect" questions "should be posed sparingly," id. at 339, and "it may prove difficult to frame [such a] question in a way that jurors can fully comprehend," Perez, 460 Mass. at 691 n.13. Nevertheless, such questions do not provide a basis for disturbing a verdict, Gray, supra at 339, if they "suggested to potential jurors that they should evaluate fairly the evidence introduced at trial," "did not commit the jury to a verdict in advance," and "did not have the effect of creating a jury comprised only of individuals predisposed to convicting the defendant," id. at 340, such as the question in Gray, supra at 337 ("Would the absence of DNA or fingerprint evidence prevent you from fairly evaluating the evidence in this case?"). See, e.g., Commonwealth v. Brown, 490 Mass. 171, 189 n.5 (2022) ("Do you think you would need to have forensic science to make a decision on a criminal case?"); Commonwealth v. Andrade, 468 Mass. 543, 546-547 (2014) ("Would the fact that you will not hear eyewitness testimony to the actual shooting in and of itself prevent you from finding the defendant guilty if the Commonwealth, through circumstantial evidence, is able to convince you beyond a reasonable doubt of the defendant's guilt?"). Contrast Charles v. State, 414 Md. 726, 736, 739 (2010) (asking jurors if they were "currently of the opinion or

belief that you cannot convict a defendant without 'scientific evidence,' regardless of the other evidence in the case," improper because it "suggested that the jury's only option was to convict").

The voir dire questions at issue here "could have been better and more neutrally phrased," Brown, 490 Mass. at 191, by avoiding the word "convict" or any variant of it. Nonetheless, the defendant's argument fails because he has not demonstrated that the question led to the selection of a biased jury or one predisposed to convict him.[3] See Commonwealth v. Curran, 488 Mass. 792, 795 (2021). Contrary to the defendant's argument, absent any suggestion of bias among the jurors who decided the defendant's case, the fact that equally impartial jurors were excused is not enough to show prejudice, because "the presumption is that that individual was replaced by another fair and impartial juror." Commonwealth v. Williams, 481 Mass. 443, 454 (2019) (no prejudice shown when "defendant has not argued that any member of the jury that ultimately convicted him was biased"). The defendant was entitled to a fair and impartial

---

[3] At oral argument, the defendant argued for the first time that he should not be required to show prejudice as the voir dire question constituted structural error. This proposition has been rejected by the Supreme Judicial Court. See Commonwealth v. Hampton, 457 Mass. 152, 163 (2010) (the defendant "must show bias. The process by which the jury were selected does not necessarily determine whether there has been structural error").

jury, not to one of his choice.  See Taylor v. Louisiana, 419 U.S. 522, 538 (1975).

Deciding this issue as we do, the defendant's argument that trial counsel was ineffective for failing to object to the voir dire question also fails.  See Commonwealth v. Randolph, 438 Mass. 290, 296 (2002) ("when a defendant alleges that his failure to preserve an issue for appeal stems from ineffective assistance of counsel, as this defendant has, we do not evaluate the ineffectiveness claim separately").

2.  Refreshed recollection.  The defendant argues that the prosecutor should not have used a document containing a witness's prior statement to police to refresh her recollection without first establishing that her memory on the subject had been exhausted.  The defendant is correct that a witness's recollection may be refreshed only on a "showing that the witness's memory is clearly exhausted," and the Commonwealth concedes that the prosecutor did not lay the proper foundation here.  Commonwealth v. Sun, 490 Mass. 196, 214 (2022), quoting Commonwealth v. O'Brien, 419 Mass. 470, 478 (1995).  See Mass. G. Evid. § 612(a) (2019).  Accordingly, we review to determine whether the error "created a substantial risk of a miscarriage of justice."  Commonwealth v. Pagan, 471 Mass. 537, 546, cert. denied, 577 U.S. 1013 (2015).  We conclude that it did not.

7

Three separate witnesses (including the witness whose recollection was refreshed) testified that the defendant pulled out a gun, pointed it at the victim, and shot him. In this broad sense, the witness's testimony was cumulative of the central testimony of the other eyewitnesses. Commonwealth v. Pires, 97 Mass. App. Ct. 480, 488 (2020) (no substantial risk of miscarriage of justice where improperly-admitted testimony was "cumulative of other evidence at trial, evidence that was overwhelming, at least on the central issues underlying the question of the defendant's guilt"). It is true that the witness's testimony differed with respect to the direction the victim was facing when he was shot, and it was on this point that her memory was refreshed.[4] But that point was tangential to the crux of the inquiry for the jury. Moreover, the inconsistency gave the defendant an additional basis to argue in closing the witnesses should not be credited -- which was the central theme of the defense. Finally, the evidence of guilt was strong and one-sided. Indeed, no alternate theory for the killing was argued or suggested at trial; the defense was based only on attacking the credibility of the Commonwealth's witnesses -- a defense which, as we have already noted, was

---

[4] The two other witnesses did not say (nor were they asked) whether the victim "turned back around" to the defendant before he was shot.

8

strengthened by the inconsistency created by the refreshed testimony. Taken in the context of the case as a whole, we conclude that no substantial risk of a miscarriage of justice resulted from refreshing the witness's recollection with her prior statement without first establishing that her memory was exhausted. See Commonwealth v. Miranda, 22 Mass. App. Ct. 10, 21 (1986).

3. Racial composition of venire and jury. The defendant, who is Black, argues that his right to a jury drawn from a fair cross section of the community was violated, premised on an assertion that the jury (which was all white)[5] was selected from a venire that did not adequately represent a fair cross section of the community. Specifically, the defendant argues that "non-whites were not fairly and reasonably represented." For support, the defendant offers demographic information of the venire, and a side comment made by the trial judge during jury selection.[6] We agree with the judge in his conclusion that the

---

[5] One member of the jury, who was randomly selected to be an alternate and did not participate in deliberations, identified her race as "other" and her ethnicity as Hispanic.

[6] After a prospective juror expressed "I do have a concern because I look at the jury and there's not a man of color on the jury," the judge noted "[t]his is now the second time in the past month I've heard this particular comment expressed by a juror."

9

record does not support the defendant's claim of unconstitutional underrepresentation.

"A defendant is entitled to a jury selection process free from discrimination against groups in the community," under both the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Commonwealth v. Arriaga, 438 Mass. 556, 561-562 (2003). The Supreme Judicial Court has nevertheless "recognized that a requirement that each jury include members of every group in the community is impracticable. . . . Instead, what both parties are constitutionally entitled to expect is a petit jury that is as near an approximation of the ideal cross-section of the community as the process of random draw permits" (citation and quotation omitted). Id. at 562.

> "To establish a prima facie case of unconstitutional jury selection . . ., the defendants must show that (1) the group allegedly discriminated against is a 'distinctive group' in the community, (2) that the group is not fairly and reasonably represented in the venires in relation to its proportion of the community, and (3) that underrepresentation is due to systematic exclusion of the group in the jury selection process." Id. at 562-563.

It is undisputed that Black persons comprise a "distinctive group" in Hampden County, see, e.g., Commonwealth v. Mcfarlane, 102 Mass. App. Ct. 264, 270 (2023), but the defendant's argument that "non-white" persons constitute a distinctive group lacks

10

the same legal support.[7]  Cf. Commonwealth v. Sanchez, 79 Mass.

App. Ct. 189, 193, cert. denied, 565 U.S. 948 (2011), S.C., 485

Mass. 491 (2020) ("Although [t]here is no dispute that Hispanic

persons [like African-Americans] are members of a racial or

ethnic group protected under art. 1 of the Declaration of

Rights, we are not aware of any authority requiring a trial

judge to combine challenges to members of discrete racial or

ethnic groups into one 'catch all' category [citations and

quotation omitted]); Gray v. Brady, 592 F.3d 296, 306 (1st

Cir.), cert. denied, 561 U.S. 1015 (2010) (doubting "whether

['minorities' or 'non-whites'] possess[] the definable quality,

common thread of attitudes or experiences, or community of

interests essential to recognition as a 'group'").

Moreover, the defendant has only submitted complete

demographic information of the jury pools on the days his jury

was selected, "an unacceptably small sample for the purpose of

---

[7] Even were we to recognize "non-whites" as a distinctive group
for the purposes of evaluating the defendant's claim, there are
significant flaws in the methodology the defendant uses to
determine the proportion of "non-white" Hampden County
residents.  Using census data, the defendant added together
those who identified as Black and those who identified as
Hispanic, without including any other respondents identifying as
a race other than white.  The defendant also neglected to
consider that many individuals identify as both Black and
Hispanic, thus double counting any respondent so identifying.
See Commonwealth v. Bastaldo, 472 Mass. 16, 28 (2015)
("Ethnicity is generally distinct from race; for instance, a
person who identifies as Hispanic may be of any race").

11

any statistical showing of underrepresentation." Arriaga, 438 Mass. at 564. "A defendant must present evidence of a statistically significant sample, usually requiring analysis of the composition of past venires." Id. The defendant has not provided us with such an analysis. The defendant attempts to remedy this defect by pointing to the judge's anecdotal comment during jury selection that a potential juror in a previous trial had remarked that it looked to them as though there were no men of color on the jury. But this anecdotal information is also insufficient to establish a statistically significant disparity, and "visual observations alone are not a reliable guide to the true makeup of a jury venire." Commonwealth v. Tolentino, 422 Mass. 515, 520 (1996). The judge expressed neither agreement nor disagreement with that previous juror's comment.

The defendant has not satisfied the absolute disparity test used "to determine whether underrepresentation of a group is substantial." Arriaga, 438 Mass. at 565. The census data provided by the defendant states the percentage of Hampden County residents identifying as Black at 10.9 percent. Of the 132 members of the venire, nine identified as Black, a percentage of 6.81 percent. "To calculate absolute disparity, the percentage of a group's population in the jury venire is subtracted from the percentage of the group's population in the community." Id. A disparity below ten percent generally does

12

not support a claim of constitutional violation -- the absolute disparity here is 4.09 percent. See id. (disparity of 4.04 percent insufficient to support underrepresentation claim).

What remains is the defendant's argument that trial counsel was ineffective for failing to object to the all-white jury. Trial counsel submitted an affidavit stating that the lack of objection was a matter of deliberate trial strategy. More specifically, trial counsel averred that based on his experience, his view was that Black jurors from the same urban area tend to be harder on defendants because of the high rate of crime, especially involving firearms, in Springfield. A tactical decision by trial counsel is considered ineffective assistance only if such a decision was manifestly unreasonable when made. See Commonwealth v. Diaz, 448 Mass. 286, 288 (2007). The judge did not err in concluding that the defendant had not met that standard here.

4. Closing argument. The defendant also argues that counsel was ineffective for failing to object to what he characterizes as the prosecutor's own expert opinion offered during closing argument. Specifically, the defendant challenges the prosecutor's statement: "when somebody turns to walk away and then somebody yells back at them and you turn back, you lower your head a little bit. Just natural. Human instinct.

So whether they were the same height or taller or shorter doesn't matter."

Prosecutors may argue "forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence" (citation omitted), Commonwealth v. Carriere, 470 Mass. 1, 19 (2014), but they may not "misstate the evidence or refer to facts not in evidence" (citation omitted), Commonwealth v. Martinez, 476 Mass. 186, 200 (2017). "We consider the prosecutor's remarks 'in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial.'" Commonwealth v. Johnson, 102 Mass. App. Ct. 195, 203 (2023), quoting Martinez, supra.

Here, taken in context, the prosecutor's statement was not offering an expert opinion so much as inviting the jury to draw on their own experiences with the physical reactions of human beings, a matter well within their "experience and common knowledge." Commonwealth v. Ridge, 455 Mass. 307, 330 (2009). In addition, the trial judge instructed -- on three separate occasions -- that closing statements were not evidence for the jury to consider, negating any risk of a miscarriage of justice that would justify a new trial. See, e.g., Commonwealth v. Fernandes, 478 Mass. 725, 743 (2018) (jurors presumed to follow instructions).

14

5.  Direct testimony.  The defendant's final argument is that his right to confront the witnesses against him was violated by the trial judge's decision not to strike the entirety of a witness's direct testimony after she invoked her Fifth Amendment rights on cross-examination.  Because the defendant objected below, "[w]e must determine, first, whether the defendant's constitutional rights were violated, and, second, if a violation is found, whether reversal is warranted because the error was not harmless beyond a reasonable doubt." Commonwealth v. Vardinski, 438 Mass. 444, 450 (2003).

The witness testified under a cooperation agreement, but without immunity from prosecution.  During cross-examination, she invoked her Fifth Amendment rights when questioned about the criminal charges that were brought against her for taking her neighbor's cell phone immediately after the shooting.  The neighbor's husband had used the phone to film the partygoers fleeing after the shooting took place.

When the judge asked defense counsel what he hoped to elicit by asking the witness about the theft of the cell phone, counsel responded that "it goes to her bias and to her motives to lie."  He also stated that "[t]his isn't some unrelated crime.  This all happened in one event," and that "it hasn't come out yet but it will come out that she despises [the defendant] so she didn't steal the phone to protect him."  The

15

defendant's motion was denied; counsel was not allowed to continue examining the witness about the robbery, but fulsome cross-examination continued about the shooting, the cooperation agreement, and the witness's feelings toward the defendant.

"Both the Sixth Amendment and art. 12 guarantee a criminal defendant's right to confront the witnesses against him through cross-examination. . . . The right to confrontation guarantees that, in most circumstances, a criminal defendant as a matter of right may cross-examine the prosecution's witnesses." Commonwealth v. Miles, 420 Mass. 67, 71 (1995). "[R]efusal to answer the cross-examiner's questions may so distort the fact-finding process that the Constitution compels a remedy. Some or all of the direct testimony may be struck." Commonwealth v. Funches, 379 Mass. 283, 292 (1979). "Whether the Sixth Amendment has been violated in such a situation depends upon 'an analysis of the purpose of the inquiry [on cross-examination] and the role which the answer, if given, might have played in the defense.'" Commonwealth v. Turner, 393 Mass. 685, 690 (1985), quoting United States v. Cardillo, 316 F.2d 606, 612 (2d. Cir.), cert. denied, 375 U.S. 822 (1963). "If the witness's testimony would merely have been collateral or cumulative, the direct testimony need not be struck." Turner, supra.

Such was the case here. To the extent that questioning the witness about the robbery would have revealed her bias against the defendant, it would have been cumulative of her other answers on cross-examination. As an example, counsel elicited that the witness despised the defendant, and that she called him "a straight bitch" in a series of Facebook posts. Counsel was also permitted to explore the witness's motives to lie, including cross-examining her on the pending charges, her dealings with the police, her cooperation agreement, and that she did not expect the charges to result in a prison sentence. Finally, the details of the robbery, the witness's interactions with the neighbors both before and after the shooting, the theft of the cell phone, the information that the phone had been used to film the scene, and the fact that the phone ended up in the witness's house, were all facts testified to by the neighbor. Because the witness's testimony would have been cumulative, there was no error in declining to strike her direct testimony.

6. <u>Conclusion</u>. We affirm the judgment of conviction on count one of the indictment, murder in the second degree, G. L. c. 265, § 1, and the order denying the motion for a new trial. We vacate the judgments of conviction on counts two and three of the indictment, unlicensed possession of a firearm, G. L. c. 269, § 10 (<u>a</u>), and unlicensed possession of a loaded firearm,

17

G. L. c. 269, § 10 (n).  The verdicts on those counts are set aside.

So ordered.

By the Court (Wolohojian, Shin & Hodgens, JJ.[8]),

Anne M. Thomas

Assistant Clerk

Entered:  January 4, 2024.

---

[8] The panelists are listed in order of seniority.